**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| TIFFANY HUGGINS, GEOFF EDWARDS, and BEVERLY BLALOCK, individually and on behalf of a class of similarly situated individuals, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 25 C 2460 |
| vs. | ) ) | |
| ABBOTT LABORATORIES, | ) ) | |
| Defendant. | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

MATTHEW F. KENNELLY, District Judge:

Tiffany Huggins, Geoff Edwards, and Beverly Blalock purchased Similac brand infant formula produced by Abbott Laboratories. They have filed suit against Abbott on behalf of themselves and a putative class. They contend that the Similac products they purchased contained heavy metals not disclosed on the product labels, and they assert claims for violations of state consumer protection acts, common law fraud, breach of the implied warranty of merchantability, and unjust enrichment. Abbott has moved for summary judgment and to exclude the opinions of the plaintiffs' experts under *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993). For the reasons below, the Court grants summary judgment for Abbott and denies as moot the motions to exclude.

**Background**

The following facts are undisputed unless otherwise noted. Abbott is a leading supplier of infant formula in the United States. It produces the formula brand Similac.

The plaintiffs are parents who purchased Similac infant formula to feed their infant children from 2019 through 2024.  They purchased the following Similac infant formula products:  Similac Pro-Advance, Similac 360 Total Care, Similac Neosure, Similac Soy Isomil, Similac Advance OptiGRO Powder – Milk-Based, and Similac Total Comfort.  Similac packaging contained statements like "[n]utrition designed for immune support, brain development, and digestive health[,]" "[c]omplete nutrition for baby's first year[,]" "brain nourishing DHA, eye health lutein, growth and development Vitamin E[,]" and "[o]ur closest formula to breast milk[.]"  Pls.' L.R. 56.1 Stmt. ¶ 40; *see also* Am. Compl ¶¶ 8–10 (showing Similac packaging with similar statements).

The plaintiffs did not test the levels of heavy metals in the Similac they purchased.  But testing of Similac formula has indicated the presence of heavy metals, namely, lead, cadmium, mercury, and arsenic.  Specifically, each brand of Similac formula tested contained a detectable level of at least one heavy metal.  At the relevant time, Abbott did not disclose on its website or packaging that Similac contained heavy metals.

In 2025, Tiffany Huggins and Lauren Nunez filed the present suit against Abbott on behalf of themselves and others similarly situated.  The complaint was amended to add as plaintiffs Geoff Edwards, Beverly Blalock, and Janne Perez.  Perez and Nunez were later dismissed by stipulation.  The amended complaint includes claims for violations of state consumer protection acts, common law fraudulent misrepresentation and omission, violation of the implied warranty of merchantability, and unjust enrichment, all stemming from Abbott's failure to disclose the risk or presence of heavy metals in Similac products.  The plaintiffs allege that if they had known that the products

contained heavy metals, they would not have purchased Similac or would not have paid as much as they did.

Under a joint stipulation, the plaintiffs agreed to dismiss several claims brought under Minnesota law and to dismiss an implied warranty of merchantability claim asserted by Edwards. Dkt. 39 ¶¶ 2–3. The plaintiffs have stipulated that they seek only damages and not injunctive relief. *See id.* at ¶ 3. They plan to seek class certification if the case survives summary judgment.

Heavy metals can cause adverse effects. But the plaintiffs' claims do not concern any adverse health effects their children may have suffered from consuming Similac: Plaintiffs represent that they "will not offer any evidence or argument in this case that their own child(ren) are currently experiencing, or have ever experienced . . . will experience, or are at an elevated risk of experiencing, any disease, illness, symptom, or other negative health condition as a result of consuming Similac infant formula(s) containing heavy metals." Def.'s Ex. 257 ¶ 2.

This case is "an effective continuation" of a prior case before this Court concerning heavy metals in infant formula, *Willoughby v. Abbott Laboratories*, No. 22 C 1322. *See* Dkt. 29 at 2. *Willoughby* involved similar consumer protection and common law claims against Abbott by parents who had purchased Similac infant formula containing heavy metals.[1] On Abbott's motion to dismiss in *Willoughby*, the Court held

---

[1] *Willoughby* was before the undersigned judge due to its relationship to a multidistrict litigation proceeding that included personal injury lawsuits on behalf of infants who claimed to have been harmed by bacterial contamination of Similac. The parties in the present case agreed that this case is unrelated to the multidistrict litigation proceeding before the Court. *See* Dkt. 26 (granting motion to separate the present case from the multidistrict litigation against Abbott).

that the plaintiffs had failed to state several claims and that they did not have standing to seek injunctive relief. *In re Recalled Abbott Infant Formula Prods. Liab. Litig.*, No. 22 C 1322, 2023 WL 3585759, at *1 (N.D. Ill. May 22, 2023). After discovery, Abbott moved for summary judgment based on the merits and lack of standing on the remaining damages claim. *See Willoughby v. Abbott Labs.*, No. 22 C 1322, 2025 WL 622925, at *1 (N.D. Ill. Feb. 26, 2025). The Court concluded that the plaintiffs had standing but that Abbott was entitled to summary judgment on the merits. *Id.* Each of the plaintiffs' claims required proof of damages, but the plaintiffs merely asserted that they would not have paid as much for Similac had they known it contained heavy metals. *Id.* at *6. The plaintiffs' experts on damages did not conduct an analysis to quantify the plaintiffs' monetary injury, although they proposed a statistical analysis which could support the plaintiffs' assertion. *Id.* The Court granted Abbott's motion for summary judgment on the ground that a reasonable jury could not find that the plaintiffs demonstrated that "they lost the benefit of their bargain." *Id.* at *7.

In the present case, the parties agreed to deem all discovery from *Willoughby* re-produced. Dkt. 44. They added to this record a new analysis by the plaintiffs' damages experts and additional discovery related to the new named plaintiffs. *See* Dkt. 15 at 3.

Abbott has moved for summary judgment on all of the plaintiffs' claims. Abbott also seeks to exclude certain opinions of the plaintiffs' experts under *Daubert* and Federal Rule of Evidence 702.

## Discussion

Summary judgment is appropriate if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

4

law."  Fed. R. Civ. P. 56(a).  A dispute is genuine if, after drawing all reasonable inferences from the record in favor of the nonmoving party, "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party seeking summary judgment bears the initial burden of establishing that there is no genuine dispute regarding a material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the movant has met this burden, the party that bears the ultimate burden at trial must identify "specific, admissible evidence showing that there is a genuine dispute of material fact for trial."  *Grant v. Trs. of Indiana Univ.*, 870 F.3d 562, 568 (7th Cir. 2017).  If the party with the burden of proof cannot show that each essential element of its claim or defense is factually supported, summary judgment against that party is appropriate.  *Celotex*, 477 U.S. at 323–24.

### 1.      Consumer protection acts

The plaintiffs claim that Abbott's failure to disclose the presence of heavy metals in Similac violated various state consumer protection laws:  the Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA), 815 Ill. Comp. Stat. § 505/2; the Washington Consumer Protection Act (WCPA), Wash. Rev. Code § 19.86.020; the California Consumers Legal Remedies Act (CLRA), Cal. Civ. Code § 1770(a)(5), (7), (9), (16); the California False Advertising Law (CFAL), Cal. Bus. & Prof. Code § 17500; the California Unfair Competition Law (CUCL), *id.* § 17200; the Pennsylvania Unfair

Trade Practices and Consumer Protection Law (UTPCPL), 73 Pa. Stat. Ann. § 201-3; and New York General Business Law §§ 349–50.[2]

Both Abbott and the plaintiffs address these claims jointly without laying out the requirements of each statute. The Court does the same, following the Seventh Circuit. *See, e.g.*, *Beardsall v. CVS Pharm., Inc.*, 953 F.3d 969, 972 (7th Cir. 2020) (discussing fourteen consumer protection statutes across twelve states, all of which "require plaintiffs to prove that the relevant labels are likely to deceive reasonable consumers").

Taking the ICFA as an example, to prevail "a plaintiff must show: '(1) a deceptive or unfair act or promise by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice; and (3) that the unfair or deceptive practice occurred during a course of conduct involving trade or commerce.'" *Camasta v. Jos. A. Bank*

---

[2] The plaintiffs from California and New York were dismissed by joint stipulation, and the remaining plaintiffs reside in Washington, Illinois, and Pennsylvania. Neither party has suggested that the California or New York claims should be dismissed or that they have been dismissed by stipulation or amendment. The plaintiffs, however, distinguish cases in their response by noting that discussion of New York and California law is not relevant. *See* Pls.' Resp. to Def.'s Mot. for Summ. J. at 13–14. The Court is reluctant to address the status of these claims without briefing from the parties, especially given that the plaintiffs may intend to find substitute class representatives for the putative California and New York subclasses. In any case, the Seventh Circuit has analyzed claims under the ICFA and California consumer protection laws in tandem. *See Beardsall v. CVS Pharm., Inc.*, 953 F.3d 969, 973 (7th Cir. 2020). The New York claims are governed by a distinct standard, as New York law requires that "'the business alone possesses material information that is relevant to the consumer and fail[ed] to provide this information,' or that plaintiffs could not 'reasonably have obtained the relevant information they now claim the [defendant] failed to provide.'" *Paradowski v. Champion Petfoods USA, Inc.*, No. 22 C 962, 2023 WL 3829559, at *2 (2d Cir. June 6, 2023) (quoting *Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741, 745 (N.Y. 1995)); *see also Zwiercan v. Gen. Motors Corp.*, No. 3235 JUNE.TERM 1999, 2003 WL 1848571, at *2 (Pa. Com. Pl. Mar. 18, 2003) (UTPCPL requires that information be unavailable to the consumer and concern a "serious and life threatening latent defect"). But the outcome of the present motion is unaffected by that requirement, as discussed below.

*Clothiers, Inc.*, 761 F.3d 732, 739 (7th Cir. 2014) (quoting *Wigod v. Wells Fargo Bank, N.A.,* 673 F.3d 547, 574 (7th Cir. 2012)); *see also Montes v. Sparc Grp., LLC*, 136 F.4th 1168, 1170 n.3 (9th Cir. 2025) (describing elements of a WCPA claim). A plaintiff also must show that "he suffered 'actual damage' as a result of the defendant's violation of the act." *Camasta*, 761 F.3d at 739 (quoting 815 Ill. Comp. Stat. Ann. 505/10a). A plaintiff may "premise her claim on either deceptive conduct or unfair conduct (or both)." *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 646 (7th Cir. 2019).

### a. Deception

The state consumer protection statutes require proof that a communication is "likely to deceive reasonable consumers[,]" *Beardsall*, 953 F.3d at 972, which "requires a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Id.* at 973 (quoting *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016)). "A label is deceptive if it is likely to mislead a reasonable consumer in a material respect, even if it is not literally false. This determination of the likelihood of deception 'is an impressionistic one more closely akin to a finding of fact than a conclusion of law.'" *Id.* at 973 (citations omitted) (quoting *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 762 (7th Cir. 2014)). Courts consider "all the information available to consumers and the context in which that information is provided and used." *Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 477 (7th Cir. 2020). "What matters most is how real consumers understand and react to the advertising." *Id.* at 476.

The plaintiffs have stipulated that their claims rest "solely on a theory of omissions" and disclaim pursuing "a theory of false or misleading affirmative

representations." Dkt. 39 ¶ 4. This stipulation precludes the plaintiffs from asserting that Abbott made a false, affirmative statement that Similac was free of heavy metals or even a misleading statement to this effect. Rather, the plaintiffs have limited themselves to a claim that Similac labels deceived them by omission.

An omission may deceive consumers when the "circumstances . . . constitute an implied but false representation." *Matter of Int'l Harvester Co.*, 104 F.T.C. 949, 1058 (F.T.C. 1984).[3] To give rise to a "false impression," an omission must involve more than simply "incomplete" information. *Gouwens v. Target Corp.*, No. 22 C 50016, 2022 WL 18027524, at *3 (N.D. Ill. Dec. 30, 2022) (quoting *Spector v. Mondelez Int'l, Inc.*, 178 F. Supp. 3d 657, 672 (N.D. Ill. 2016)); *see also Phillips v. DePaul Univ.*, 2014 IL App 122817 ¶ 40, 19 N.E.3d 1019, 1030.

The plaintiffs contend that Abbott conveyed the false impression that Similac was free of heavy metals by emphasizing that it was a healthy, nutritious product well-suited to the developmental needs of infants. This claim is not "based on the specific *quantities* of heavy metals present in [the defendant's] products." *Paradowski*, 2023 WL 3829559, at *3; *In re Plum Baby Food Litig.*, Case No. 4:21-CV-00913, 2024 WL 1354447, at *8 (N.D. Cal. Mar. 28, 2024) (granting summary judgment on New York GBL, ICFA, and UTPCPL claims alleging the "presence or risk of heavy metals" in baby food), *aff'd*, No. 24-2766, 2025 WL 1200700 (9th Cir. Apr. 25, 2025). Rather, the plaintiffs' claim is that Similac "should have disclosed that its products contained—or

---

[3] The state consumer protection statutes direct courts to consider interpretations by the Federal Trade Commission of analogous provisions of the Federal Trade Commission Act, on which these statutes are modeled. *See, e.g.*, 815 Ill. Comp. Stat. Ann. 505/2; Wash. Rev. Code § 19.86.920; *Comm. by Creamer v. Monumental Props., Inc.*, 329 A.2d 812, 817–18 (Pa. 1974).

had a material risk of containing—*any* amount of heavy metals[.]" *Paradowski*, 2023 WL 3829559, at *3.

Courts have explained that an omission must be an omission from a communication rather than "a general failure to disclose[.]" *See Darne v. Ford Motor Co.*, No. 13 C 3594, 2017 WL 3836586, at *10 (N.D. Ill. Sept. 1, 2017); *Fleury v. Gen. Motors LLC*, 654 F. Supp. 3d 724, 732 (N.D. Ill. 2023). In *Garland v. Children's Place, Inc.*, No. 23 C 4899, 2024 WL 1376353 (N.D. Ill. Apr. 1, 2024), this Court dismissed the ICFA claims of plaintiffs who alleged a general failure to disclose the presence of PFAS (polyfluoroalklyl substances) in children's school uniforms. *Id.* at *6. The plaintiffs in *Garland* alleged that Children's Place should have disclosed on its website, product tags, or in its advertising the presence of PFAS in its products, but they did not point to a particular statement from which the Children's Place had omitted information about PFAS. In the present case, the plaintiffs contend that the presence of heavy metals was omitted from the labels of the Similac products they purchased and point to specific, ingredient- and health-related statements as the source of the material omissions. This goes beyond an allegation of a general failure to disclose.

Even so, the plaintiffs have not shown that there is a genuine factual dispute over whether reasonable consumers would be misled by Similac packaging to believe the product was free of heavy metals. The Similac labels advertised certain ingredients and linked some of those ingredients to health and nutritional claims: "5 HMO [human milk oligosaccharides] prebiotics"; "2'-FL HMO For Immune Support"; "Brain Nourishing DHA" (Docosahexaenoic Acid); "Eye Health Lutein"; "Growth & Development Vitamin E[.]" Pls.' L.R. 56.1 Stmt. ¶ 52. The labels also claimed that Similac was free of other

ingredients, such as artificial growth hormones, GMOs (genetically modified organisms), and palm olein oil. *See id.* ("No Palm Olein Oil For Stronger Bones"). But none of the products mentioned heavy metals or lead, cadmium, mercury, or arsenic by name.

The plaintiffs assert that Similac packaging led them to believe that Similac was a high quality, safe infant formula free of heavy metals. That conclusion does not reasonably follow from the packaging. As a general matter, a reasonable consumer would not infer that a product was free of one ingredient because its packaging advertised that it lacked other ingredients. Moreover, it is common knowledge that substances like heavy metals, microplastics, PFAS, and BPA (Bisphenol A) are present in many products, even products intended for children and infants. And the parties also agree that heavy metals are commonly detected in infant formula (as well as breast milk and food). The Court must "take into account all the information available to consumers and the context in which that information is provided and used." *Bell*, 982 F.3d at 477. The ingredient- and health-related claims on Similac packaging did not "create[] a likelihood of deception" under these circumstances. *Benson*, 944 F.3d at 646.

The plaintiffs list several categories of evidence to support their contention that a reasonable consumer would not expect heavy metals in Similac. Pls.' Resp. to Def.'s Mot. for Summ. J. at 9–10. First, they note that not one of them knew of heavy metals in Similac, as they testified in their depositions. *Id.* at 9. Yet the question is not whether one of the three plaintiffs knew that Similac contained heavy metals, but whether a reasonable consumer would have been misled by Similac's packaging about the presence of heavy metals. The recollections or opinions of the plaintiffs or of other individual consumers are not dispositive or even probative. The plaintiffs also cite

10

several other sources:  a report from the U.S. Congressional Subcommittee on Economic and Consumer Policy regarding heavy metals in baby foods; a statement from the Infant Nutritional Council of America related to proposed California legislation to require testing of infant formula and disclosure of heavy metals; and a letter from Abbott to the publication Consumer Reports asking it to educate consumers that heavy metals are present in the environment.  *See id.*  None of these sources demonstrate that reasonable consumers were misled by Similac packaging to believe that it was free of heavy metals.

The plaintiffs also cite two expert reports.  In analyzing deception, "[w]hat matters most is how real consumers understand and react to the advertising."  *Bell*, 982 F.3d at 476.  Consumer surveys are one means of demonstrating how consumers react to an advertisement or product package.  Although "extrinsic evidence in the form of consumer surveys or market research" is not required to survive summary judgment, such evidence is "necessary where the advertising is not clearly misleading on its face and materiality is in doubt."  *Beardsall*, 953 F.3d at 976.

The plaintiffs point to the expert reports of Robert Klein and Bruce Silverman to support the contention that Similac packaging led reasonable consumers to believe that the products were free of heavy metals.  Klein, a market research expert, conducted a survey for the plaintiffs.  The main part of the survey stated that it "concerns your expectations about Similac powdered infant formula products.  We are interested in your own beliefs and opinions."  Def.'s Ex. 259, at 9.  The next question, the so-called Expectation Question, included photos of unaltered Similac labels, asked respondents to "look at the products as you normally would if you encountered them while shopping

and were considering whether or not to purchase the products," and then asked, "[i]n your opinion, would you or would you not expect that Similac powdered infant formula products would" contain various ingredients, including heavy metals, perchlorate, insect parts, and artificial food coloring and preservatives. *Id.* at 9–12.  Of the approximately 400 survey respondents, 88.9% answered that they would not expect Similac to contain heavy metals and 6.9% said that they would expect Similac to contain heavy metals. *Id.* at 14.

Abbott seeks to exclude Klein's testimony, but even if one takes Klein's report into account, it does not create a genuine factual dispute on the deception issue before the Court.  Klein did not ask whether survey respondents expected that Similac would contain heavy metals *based on Similac's packaging*.  The relevant issue is whether Similac packaging, considered in light of the totality of the "circumstances . . . constitute[d] an implied but false representation" that Similac was free of heavy metals. *Matter of Int'l Harvester Co.*, 104 F.T.C. at 1058.  But the Expectation Question, which elicited information based on "your own beliefs and opinions" and then showed respondents the Similac labels, Def.'s Ex. 259, at 9, does not provide insight into how consumers would interpret Similac packaging alone.  Klein's survey, even if admitted, would not permit a reasonable factfinder to determine that Similac labels were deceptive in the manner relevant in this case.

The plaintiffs also cite the report of Bruce Silverman, a marketing expert who did not conduct a survey, for the proposition that "reasonable consumers do not expect the presence or risk of Heavy Metals in the Products."  Pl.'s Resp. to Def.'s Mot. for Summ. J. at 2 (quoting Def.'s Ex. 259 ¶ 64).  Abbott seeks to exclude Silverman's report.

12

Again, however, consideration of Silverman's testimony would not create a genuine dispute of material fact. Although the report makes general statements that reasonable consumers would not expect heavy metals in infant formula, Silverman does not persuasively explain how or why a reasonable consumer would have such an expectation. And portions of Silverman's report actually support Abbott's argument. He states that parents of young children are subjected to many news stories about the dangers of heavy metals and cites various sources that parents might read concerning heavy metals in infant formula. See Def.'s Ex. 262, ¶¶ 49–53. In short, the Silverman report does not create a genuine dispute regarding whether a reasonable consumer would expect the presence of heavy metals in Similac.

In some situations where experts have conducted surveys asking consumers about the impressions they take from a particular statement on a package, those reports have created a genuine dispute of material fact regarding omissions on product packaging. *See Zarinebaf v. Champion Petfoods USA Inc.*, No. 18 C 6951, 2022 WL 980832, at *6 (N.D. Ill. Mar. 31, 2022) (Kendall, J.) (denying defendant's motion for summary judgment where an expert surveyed whether, based on "Biologically Appropriate" statements on dog food packaging, respondents would believe the dog food contained heavy metals); *see also Zeiger v. WellPet LLC*, 526 F. Supp. 3d 652, 682–83 (N.D. Cal. 2021) (denying, with reference to Silverman's report, defendant's motion for summary judgment on CLRA, CFAL, and CUCL claims regarding heavy metals in pet food labeled as "uncompromising nutrition" and "natural"). But the Court does not find Silverman or Klein's reports probative of the expectations of reasonable consumers based on Similac packaging.

13

By contrast, Abbott's position is bolstered by the unchallenged report of its expert, Dr. Ran Kivetz, who conducted a survey in which respondents compared unaltered Similac labels to Similac labels omitting health-related claims. Def.'s Mem. in Supp. of Summ. J. at 14–15. Neither group reported receiving any messages about heavy metals. *See id.* That survey properly addresses the messaging that consumers received from Similac packaging, unlike Klein's more ambiguously worded questions.

In sum, the plaintiffs allege that Similac packaging—which represented that Similac helps certain aspects of infant development, contains specific ingredients, and lacks GMOs, artificial growth hormones, and palm olein oil—deceived consumers into believing that Similac was free of heavy metals. As the Court has concluded, no reasonable jury could find in the plaintiffs' favor on this issue. Neither the plaintiffs' perception of the labels nor the expert reports of Klein and Silverman alter that conclusion.

The plaintiffs' claims fail for an independent reason: the record establishes, without a genuine factual dispute, that a reasonable consumer could have obtained information regarding heavy metals in infant formula and therefore would not have been misled by the omission from Similac packaging. The reasonable consumer standard requires considering "all the information available to consumers and the context in which that information is provided and used." *Bell*, 982 F.3d at 477. In analyzing each of the state consumer protection claims, a court must consider whether the defendant possessed information that was either unknown or not easily discoverable to the public, which is relevant to understanding a reasonable consumer's knowledge. *See, e.g.*, *Paradowski*, 2023 WL 3829559, at *2 (explaining that N.Y. Gen. Bus. L. § 349 requires

14

that "'the business alone possesse[d] material information that is relevant to the consumer and fail[ed] to provide this information,' or that plaintiffs could not 'reasonably have obtained the relevant information they now claim the [defendant] failed to provide.'" (quoting *Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741, 745 (N.Y. 1995))); *Randels v. Best Real Est., Inc.*, 243 Ill. App. 3d 801, 807, 612 N.E.2d 984, 988 (1993) (noting that under the ICFA, "a finding of liability is made when the defendant misrepresents or omits facts of which he possess almost exclusive knowledge the truth or falsity of which is not readily ascertainable by the plaintiff."); *Griffith v. Centex Real Est. Corp.*, 969 P.2d 486, 492 (1998), *as amended on denial of reconsideration* (Dec. 14, 1998) (explaining that the WCPA applies "when the facts are known to the seller but not easily discoverable by the buyer"); *Zwiercan v. Gen. Motors Corp.*, 2002 WL 31053838, at *4 (Pa. Com. Pl. Sept. 11, 2002) (requiring under the UTPCPL that defendant have "superior knowledge of a material fact that is unavailable to the consumer" and drawing on Illinois and New York law). Each statute concerns the capacity of an omission to deceive reasonable consumers, and consumers are unlikely to be deceived by an omission of publicly accessible information.

The record demonstrates that the plaintiffs could have reasonably obtained information on the presence or risk of heavy metals in infant formula. As a result, a reasonable consumer would not be misled by any omissions from Similac labels. Abbott submitted 186 publicly available sources, including scientific articles, news stories, and reports, that mention both a term relating to its products—"baby formula," "infant formula," "Similac," or "Abbott"—and a metal-related term—"heavy metal,"

"heavy metals," "lead," "arsenic," "cadmium," or "mercury."  Def.'s Reply, Decl. of Sean O'Shea ¶¶ 4, 6.  Of these sources, the most relevant are a series of articles from several years before and during the purchase period:

- a 2017 Environmental Defense Fund report, "Lead in food: A hidden health threat," summarizing Food and Drug Administration (FDA) tests on lead in baby food and showing detectable levels of lead in 6% of samples of infant formula and 20% of samples of solid baby food (Def.'s Ex. 76, at 4–5);

- a 2017 Clean Label Project report, "CLP Infant Formula & Baby Food Test," showing that 50% of infant formula and baby food samples contained arsenic and 30% contained lead, and rating Similac products one out of five stars on heavy metal contamination (Def.'s Ex. 87);

- various parenting blogs published from 2021-2023 and discussing heavy metals in infant formula (Def.'s Exs. 155–57);[4]

- and several scientific studies (Def.'s Exs. 158–160).[5]

The Clean Label Project study was discussed in national media sources, some of which explicitly referred to heavy metals in infant formula.  *See, e.g.*, Def.'s Ex. 92, USA Today, *These baby foods and formulas tested positive for arsenic, lead and BPA in new*

---

[4]  *See* Def.'s Ex. 155 (The Milky Box, *Are There Heavy Metals in Baby Formula?* (Dec. 15, 2023)); Def.'s Ex. 156 (Organic's Best, *Should You Be Concerned About Heavy Metals in Baby Formula?* (May 5, 2021)); Def.'s Ex. 157 (Milk Drunk, *Heavy Metals in Baby Foods?* (Feb. 5, 2022)).

[5] *See* Def.'s Ex. 158 (Emily C. Bair, *A Narrative Review of Toxic Heavy Metal Content of Infant and Toddler Foods and Evaluation of United States Policy*, Front. Nutr. (2022)); Def.'s Ex. 159 (Naya Martin, *The Quantification of Heavy Metals in Infant Formulas Offered by the Florida WIC Program* (2020)); Def.'s Ex. 160 (I. Kuznetsova, et al., *Heavy Metals in Milk Infant Formulas*, Food Science & Tech. (2019)).  Exhibit 158 does not discuss infant formula and instead concerns heavy metals in complementary foods introduced to infants and toddlers.

16

*study* (Oct. 25, 2017).  Additionally, beginning in March 2021, the website of the Infant Nutrition Council of America, of which Abbott is a publicly listed member, stated that "trace levels" of heavy metals may be found in both infant formula and breast milk. Def.'s L.R. 56.1 Stmt., ¶ 48; Def.'s Ex. 143.[6]

Many of these sources address infant formula generally and do not name Similac or Abbott.  But Similac is "one of the two leading infant formula brands by market share."  Def.'s L.R. 56.1 Stmt. ¶ 2.  Sources discussing heavy metals in infant formula would alert a reasonable consumer to a risk of heavy metals in Similac.

The Court does not give weight to Abbott's sources from the 1970s, 1980s, and 1990s, *see* Def.'s Mot. at 8–9, or to sources that are so recent that they did not exist during the purchase period defined by the plaintiffs.  *Id.* ¶¶ 52–53 (describing 2025 testing for metals in infant formula and the Department of Health and Human Service's Operation Stork Speed, which was created to test and address contaminants in infant formula).[7]

---

[6] The plaintiffs object to these sources as inadmissible hearsay.  *See Cairel v. Alderden*, 821 F.3d 823, 830 (7th Cir. 2016) ("To be considered on summary judgment, evidence must be admissible at trial, though 'the form produced at summary judgment need not be admissible.'" (quoting *Wragg v. Village of Thornton*, 604 F.3d 464, 466 (7th Cir. 2010))).  This objection fails.  These articles and reports are not considered for the truth of the matter asserted but rather the fact of their publication, which demonstrates that reasonable consumers had notice of concerns about heavy metals in infant formula. *See Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 232 (7th Cir. 2021) ("a statement that is used only to show that the opposing party had notice of it is not hearsay").

[7] The plaintiffs bring this action on behalf of a putative class of "[a]ll persons who, from March 7, 2019, to the present, purchased the Infant Formula for household use, and not for resale[.]"  Am. Compl. ¶ 200.  The class definition refers to "the present," the date on which the complaint was filed in March 2025.  But no motion for class certification has been filed, so the Court examines the record for evidence relating to heavy metals in infant formula through the end of 2024, when the plaintiffs themselves ceased purchasing Similac products.

The Court also discounts Abbott's sources that discuss the presence of heavy metals in baby food, pureed or soft foods prepared for children, but do not mention infant formula. As used in common speech, "baby food" means pureed or soft solid foods, not powdered infant formula that is mixed with a liquid for consumption. *See, e.g.*, Def.'s Ex. 101 (discussing baby cereals, packaged fruit and vegetables, packaged entrees, and packaged snacks as categories of baby food). Sources that discuss baby food and do not mention infant formula would not alert a reasonable consumer to the presence of heavy metals in powdered infant formula.

Many courts have granted summary judgment on similar claims alleging that a company omitted information regarding the risk of an unspecified quantity of heavy metals in a product. *See In re Trader Joe's Co. Dark Chocolate Litig.*, No. 23 C 0061, 2025 WL 951269, at *4–5 (S.D. Cal. Mar. 27, 2025) (granting summary judgment on claims under the ICFA, WCPA, and N.Y. Gen. Bus. L. §§ 349–50 regarding heavy metals in dark chocolate because there was no genuine dispute that information about the risk of heavy metals in chocolate was reasonably obtainable); *Paradowski*, 2023 WL 3829559, at *3 (same, based on FDA standards for heavy metals in pet foods and public studies demonstrating that seafood, a listed ingredient, often contains heavy metals); *In re Plum Baby Food Litig.*, 2024 WL 1354447, at *1 (same, based on publicly available information on heavy metals in baby food).

The Similac packages advertised various health and nutritional benefits for infants. But "while making some extrapolations from advertisements could be plausible in some circumstances, this is not one of them. There is nothing that logically connects . . . the presence of certain substances in an infant formula with the absence of some

18

other substance." *Lopez v. Mead Johnson & Co.*, No. 24 C 03573, 2026 WL 788492, at *6 (N.D. Cal. Mar. 20, 2026) (granting motion to dismiss CUCL, CLRA, and CFAL claims regarding heavy metal content in infant formula). "Courts must be careful at summary judgment to view the evidence in the light most favorable to the plaintiff . . . But granting summary judgment is appropriate if no reasonable jury could find that defendants' labels are likely to mislead reasonable consumers." *Beardsall*, 953 F.3d at 976. That is the case here. The plaintiffs have not provided evidence that would permit a reasonable jury to find that the Similac labels, which said nothing at all about heavy metals, were likely to mislead reasonable consumers. The fact that Abbott could have provided "more specific" information regarding heavy metals in Similac does not establish a genuine factual dispute on a claim of deception arising from alleged omission of a material fact. *Phillips*, 2014 IL App 122817, ¶ 40, 19 N.E.3d 1019, 1030.

### b. Unfair conduct

As an alternative to deception, the plaintiffs assert that Abbott engaged in unfair conduct in violation of the state consumer protection statutes. Again, the Court considers the unfair conduct theory as it applies to all the state statutory claims, which is how the parties have presented it. Taking the ICFA as an example, courts consider three factors in assessing whether conduct is unfair: "1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [and/or] (3) whether it causes substantial injury to consumers." *Kahn v. Walmart Inc.*, 107 F.4th 585, 602 (7th Cir. 2024) (quoting *Benson*, 944 F.3d at 647). "A plaintiff need not satisfy all three factors; '[a] practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three.'" *Vanzant v. Hill's*

19

*Pet Nutrition, Inc.*, 934 F.3d 730, 739 (7th Cir. 2019) (quoting *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 418, 775 N.E.2d 951, 961 (2002)). Unfair conduct, like deceptive acts, must cause the plaintiffs' damages. *Id.*

The plaintiffs have not established a genuine dispute on any of these three elements. Beginning with the first factor, whether the conduct offends public policy, there are no public standards or regulations on heavy metals in infant formula in the United States. Nor do the plaintiffs discuss "public policy" in their brief. The European Union and Canada have regulated heavy metals in infant formula, and the FDA's Operation Stork Speed seeks to address contaminants in infant formula. But potential future standards or standards from other countries do not suffice.

As for the second factor, the plaintiffs have not shown the existence of a genuine dispute regarding whether Abbott's conduct was "immoral, unethical, oppressive, or unscrupulous[.]" *Kahn*, 107 F.4th at 602 (quoting *Benson*, 944 F.3d at 647). This standard generally requires the defendant's conduct to "be so oppressive as to leave the consumer with little alternative except to submit." *Robinson*, 201 Ill. 2d at 418, 775 N.E.2d at 961; *see also Batson v. Live Nation Ent., Inc.*, 746 F.3d 827, 833 (7th Cir. 2014). As the Court has concluded, the plaintiffs have not shown a genuine factual dispute over whether Similac's labels included a deceptive omission regarding heavy metals. They therefore cannot viably contend that Abbott's omission essentially deprived them of their ability to shop around (or was otherwise immoral, unethical, oppressive, or unscrupulous). And the plaintiffs have stipulated that they would not contend that their children were injured through ingesting heavy metals; the only injury alleged in this case is financial and based on the effect of omissions on the plaintiffs'

20

purchases and pocketbooks.

Finally, regarding the substantial injury factor, the plaintiffs cite the expert report of Steve Gaskin and Colin Weir, who posit that consumers would pay 60% less for Similac with a disclosure of heavy metal content. The third criterion is satisfied "only if the injury is (1) substantial; (2) not outweighed by any countervailing benefits to consumers or competition that the practice produces; and (3) one that consumers themselves could not reasonably have avoided." *Batson*, 746 F.3d at 834. Even if the financial injury in this case is substantial, the plaintiffs have not provided evidence that would permit a finding that there was any sort of misrepresentation that caused this injury. Additionally, although the Illinois Supreme Court has stated that a plaintiff need not meet all three criteria to sustain an unfair practices claim, *see Robinson*, 201 Ill. 2d at 418, 775 N.E.2d at 961, the Court is unaware of any court that has concluded that a plaintiff has stated a claim based on the substantial-injury factor alone.[8]

For these reasons, the plaintiffs cannot sustain an unfair practices claim under the state consumer protection statutes.

### 2. Common law fraud, implied warranty of merchantability, and unjust enrichment

Lastly, the plaintiffs assert common law claims against Abbott for fraudulent misrepresentation by omission, fraud by omission, and unjust enrichment. The plaintiffs also bring claims for common law breach of implied warranty and breach of implied

---

[8] An omission must also be material to be actionable under the state consumer protection statutes. *See, e.g.*, *Toulon v. Cont'l Cas. Co.*, 877 F.3d 725, 740 (7th Cir. 2017). But even if there were material omissions from Similac packaging, without establishing a genuine dispute on the deceptiveness of these omissions, the plaintiffs' claims cannot survive summary judgment.

21

warranty claim under California Commercial Code § 2314.

The plaintiffs provide three sentences of analysis on these five claims, citing just one case in a footnote and stating that the common law fraud claims survive for the same reasons as the statutory claims. They do not respond to Abbott's argument on three claims: unjust enrichment, common law breach of implied warranty, and breach of implied warranty claim under Cal. Comm. Code § 2314. Any argument against summary judgment on these three claims has therefore been forfeited or waived. *See United States v. Kopp*, 922 F.3d 337, 341 (7th Cir. 2019).

Forfeiture or waiver aside, these claims fail. "[T]here is no stand-alone claim for unjust enrichment[,]" and the unjust enrichment claim goes the same way as the plaintiffs' state statutory claims. *See Benson*, 944 F.3d at 648. And the plaintiffs have presented no evidence that Similac was not of merchantable quality, nowhere alleging that it provided inadequate nutrition and conceding that they would not contend that their infants suffered medical illness from consuming Similac. *See, e.g.*, *Brandt v. Bos. Sci. Corp.*, 204 Ill. 2d 640, 645, 792 N.E.2d 296, 299 (2003) (citing 810 Ill. Comp. Stat. Ann. 5/2–314(1)).

"To state a cause of action for common-law fraud, a plaintiff must plead: (1) a false statement of material fact; (2) knowledge or belief by the defendant that the statement was false; (3) an intention to induce the plaintiff to act; (4) reasonable reliance upon the truth of the statement by the plaintiff; and (5) damage to the plaintiff resulting from this reliance." *Muhammad v. Bailey*, 2024 IL App 230702-U, ¶ 27 (internal quotation marks omitted). "[F]raud also may consist of the intentional omission or concealment of a material fact under circumstances creating an opportunity

22

and duty to speak." *Hassan v. Yusuf*, 408 Ill. App. 3d 327, 345, 944 N.E.2d 895, 911 (2011) (quoting *Janowiak v. Tiesi,* 402 Ill. App. 3d 997, 1006, 932 N.E.2d 569, 579 (2010)).

The plaintiffs agree that the common law fraud claims will have the same fate as their state statutory claims. For the reasons previously explained, the Court has concluded that those claims cannot succeed, and the plaintiffs' common law claims do not survive summary judgment.

### 3. Motions to exclude expert opinions

Abbott has moved to exclude the opinions of five of the plaintiffs' experts: Dr. Hannah Gardener, a medical expert who opined that there is no safe level of heavy metals because of these substances "bioaccumulate" over time in an infant's body; Robert Klein, the market research expert whose consumer survey was discussed above; Bruce Silverman, the marketing expert whose report was discussed above; and Steven Gaskin and Colin Weir, who employed a conjoint damages model to calculate the price that purchasers would have paid for Similac had its heavy metal content been disclosed. The Court need not address this motion because, as it has concluded, the expert reports are insufficient to show the existence of a genuine dispute of material fact even if they are considered.

### Conclusion

For the reasons stated above, the Court grants Abbott's motion for summary judgment and denies as moot its motion to exclude experts [dkt. no. 53]. The plaintiffs' request for a hearing on the motions to exclude is denied. The Court directs the Clerk to enter judgment stating: Judgment is entered in favor of defendant Abbott

24

Laboratories and against plaintiffs.

Date:  April 15, 2026

_____
MATTHEW F. KENNELLY
United States District Judge